IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



12/29/2005

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID S. HARWOOD | § | Case No. 05-61254 |
| | § | |
| Debtor | § | Chapter 7 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon hearing of the Motion for Relief from Automatic Stay filed by FNFS, Ltd. and B & W Finance Co., Inc., (collectively, the "Movants") in the above-referenced adversary proceeding, the Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.[2]

### *FINDINGS OF FACT*

1.  The Debtor, David S. Harwood ("Debtor") executed two promissory notes to FNFS, Ltd., both dated January 1, 2003, in the original principal amounts of $750,000.00 and $125, 000.00 respectively (the "Notes").[3]

2.  FNFS, Ltd. is the owner and holder of such Notes.

3.  The obligation of the Debtor to pay the indebtedness to FNFS, Ltd. was secured by a Pledge Agreement executed by the Debtor on the same date as the Notes which granted to FNFS a security interest in 2,507 shares of stock in B & W Finance Co., Inc. (the "Debtor's Stock") owned by the Debtor.[4]

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

[2] Items identified herein as findings of fact may also be construed to be conclusions of law and are adopted as such. Items identified herein as conclusions of law may also be construed to be findings of fact and are adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

[3] *See* Movants' Ex. 1 and 2, respectively.

[4] *See* Movants' Ex. 3.

4.    The Debtor, David S. Harwood, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 15, 2005.

5.    FNFS, Ltd. and B & W Finance Co., Inc. (the "Movants") filed a Motion for Relief from Automatic Stay (the "Motion") on July 7, 2005.

6.    An objection to the relief requested in the Motion was filed by Jason R. Searcy, Chapter 7 Trustee (the "Trustee"), on July 14, 2005.  The Debtor also filed an objection to the Motion on July 22, 2005.

7.    At the initial hearing conducted on August 23, 2005, all parties agreed to the entry of an interim order which would allow the removal of a certain state court action styled *FNFS Ltd. and B & W Finance Co., Inc. v. David S. Harwood* from the County Court at Law of Smith County, Texas to this Court for prosecution.  The hearing on all other issues was rescheduled to October 4, 2005.

8.    At the October 4 hearing, all other requests for relief were withdrawn by the Movants, with the exception of the request for termination of the automatic stay as to the Debtor's Stock which is now owned by the bankruptcy estate of the Debtor.

9.    The Debtor's Stock admittedly secures the payment of indebtedness owed by the Debtor under the Notes, the aggregate balance of which was $973,416.80 as of October 4, 2005.

10.   The Debtor claims that the value of the Debtor's Stock exceeds the amount of the indebtedness owed to FNFS and that such equity adequately protects the interests of the Movants pending any sale of that asset by the Trustee.[5]

11.   The Debtor's Stock represents 50% of the issued and outstanding shares of the common stock of B & W Finance Co., Inc.

12.   B & W Finance, in turn, holds a 51% partnership interest in FNFS, Ltd. and serves as the sole general partner of FNFS.[6]  The 51% partnership interest constitutes the bulk of B & W Finance's assets.

---

[5]  Though not argued nor supported by any evidence at the hearing, the Court simply notes that the Debtor claimed in his Schedule D that the Debtor's Stock should be valued at $801,000, securing a debt of $740,000.

[6]  The remaining 49% of partnership interests in FNFS are limited partnership interests owned by twenty-five limited partners.

13.    Thus, the value of the B & W Finance stock is largely derivative of the value of FNFS, Ltd., which operates 23 consumer finance businesses across the state of Texas under various names.

14.    FNFS sustained a net loss in calendar year 2004 in excess of $600,000.00.

15.    FNFS expects smaller losses or, at best, a "break-even" year in 2005 due to increased revenue from statutory changes and through reduction of administrative expenses and through the merger and closure of certain store locations.

16.    In April, 2005, Tony K. Morgan, CPA, provided an expedited and limited valuation of the Debtor's Stock to attorneys involved in the Debtor's divorce action. That expedited and limited valuation report cited the sum of $551,000, or $219.78 per share, as the "highest value" which could be placed on such stock.[7]

17.    Two months later, Mr. Morgan was retained to prepare a more extensive valuation analysis of B & W Finance stock which was owned by the Estate of Wayne J. McKinney, deceased. Such stock constituted 40% of the outstanding stock of B & W Finance, thus constituting a non-controlling position. Mr. Morgan valued such stock as of September 10, 2004 at $150,500. or $75/share.[8]

18.    Mr. Morgan testified at the hearing that he believed that his April divorce valuation was "too high" and that the $75/share value derived from the McKinney valuation was closer to the proper valuation of the Debtor's Stock as of the present time since the Debtor's Stock also constitutes a non-controlling position in a closely-held corporation which would be subject to a significant discount factor for marketability.

19.    Though the Debtor argues that there must be an "independent valuation," the Debtor wholly failed to offer any valuation evidence at all.

20.    The Debtor asserts that the Morgan valuation figures are too low, and therefore unreliable, because of anticipated improvements in FNFS' financial performance, primarily triggered by the certain legislative changes occurring in 2005 which raised the loan ceilings and increased the amount of late fee penalties which could be legally assessed.

---

[7] *See* Movants' Ex. 9.

[8] *See* Movants' Ex. 10.

21.   However, the Debtor's position is untenable. Though the Morgan valuations admittedly did not consider the impact of the legislative changes, such changes did not become effective until September, 2005 — an insufficient period of time to have any significant impact upon the financial performance of FNFS as of the date of the hearing.

22.   Even with speculation that such legislative changes would spur higher levels of income for FNFS in 2006 and therefore engender greater interest from a prospective purchaser, the impact of such statutory amendments on the value of the Debtor's Stock would still be limited, primarily due to the fact that the Debtor does not own a controlling interest.

23.   Thus, for the purpose of determining the Movants' Motion for Relief from Automatic Stay, the Court finds that the value of the Debtor's Stock at the time of the hearing was $288,305.00, or $115.00 per share.[9]

## CONCLUSIONS OF LAW

1.   This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 157(b), and 11 U.S.C. §362.  This Court has personal jurisdiction over the parties.

2.   This is a core proceeding under 28 U.S.C. §157(b)(2)(G).

3.   11 U.S.C. §362(d) states as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

---

[9]   The Debtor expressed some concern at the stay hearing regarding the risk that any determination of value might be binding for any subsequent purpose, including at any dischargeability trial which might ultimately be tried by and among these parties.  This seem to serve as the foundation for the Debtor's expressed, but legally unfounded, demand for an "independent" valuation.  However, a valid finding as to collateral value made at one hearing is not binding in subsequent hearings conducted for different purposes. *See, e.g., Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1204 (1st Cir. 1995); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994); *In re Deep River Warehouse, Inc.,* 2005 WL 1287987, *13 (Bankr. M.D.N.C. 2005).

> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
>
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization.

4. In stay relief litigation, the party opposing stay relief, usually the debtor, has the ultimate burden of persuasion (or the risk of non-persuasion) as to all stay issues except the existence of equity pursuant to 11 U.S.C. §362(g). However, the party requesting relief from the stay must sustain an initial burden of production or going forward with the evidence to establish that a *prima facie* case for relief exists before the respondent is obligated to go forward with its proof. *See generally, In re Kowalsky,* 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999) and cases cited therein.

5. The Movants in this case base their request for stay relief under both §362(d)(1) and §362(d)(2) and the determination of the request in each instance is dependent upon the existence of equity in the specific collateral upon which relief from the stay is sought.

6. The Movants have successfully demonstrated by a preponderance of the evidence that, for the purpose of considering their request for relief from the stay, the Debtor has no equity in the Debtor's Stock.

7. When combined with the admitted amount of FNFS' claim and that such claim is secured by a valid, perfected lien in the Debtor's Stock, and since the effective reorganization prong of the §362(d)(2) analysis has no application in a Chapter 7 case, the Debtor's lack of equity in the Debtor's Stock mandates the termination of the automatic stay as to the Debtor's Stock pursuant to §362(d)(2).

8. Because termination of the automatic stay is mandated under §362(d)(2), the Court need not conduct any analysis under §362(d)(1).

Signed on 12/29/2005

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

-5-